18-1962. Attorney Mohan, you reserve three minutes to your time for rebuttal. Is that correct? I did, yes, that's correct, sir. All right, you may proceed. Good morning, Your Honors. May it please the Court, I'm here on behalf of Criedan Company appealing a final commerce scope ruling concerning steel concrete reinforcing bar from China, or rebar. On page 17 of the Blue Brief, you say the merchandise imported by Criedan has been converted from rebar and training stakes by creating a easily driven into vineyards and orchards. Yes. Could the training stakes be used as rebar? No. These training stakes are dedicated only for use for, they're designed... So if I happen to have been a union laborer and I'm used to driving rebar into the ground as the initial basis for laying rebar, and I could use them for rebar purposes. It would not be suitable for use for steel concrete reinforcement, given the length of the rebar, the fact that it has a pointed tip that is smooth without burrs. That further processing, that cutting, the removal of the burrs... How long is it? It's four to five feet in length. And if you needed to drive it into a firm foundation, it couldn't be used for rebar? If you, the record... What's your basis for that? The record of the case at the ITC, the ITC's report talks about the rebar that's in scope for steel concrete reinforcement, and those talk about longer lengths, 20 to 40 feet. In this case, the rebar is much shorter in length. I'm sorry? No. Rebars cut into various lengths for using steel concrete. Well, we didn't argue on length alone. We said that, I mean, in fact, we specifically stated in our scope request that it wasn't the end-use or the length alone. It was a fact that this was further processed into a product that took it entirely out of the scope of the rebar. So your argument is that this further processing is that you sharpen one of the ends of the rebar? The products are cut into four to five feet lengths, and then they're stamped at the end to form a point, and then that point is smoothened in order to remove the burrs. And the point ends up cone-shaped or more like pyramid-shaped? It's an So could I take a piece of rebar without a point on it and a sledgehammer and drive it into the ground and use it as a stake? As a training stake? No, because it's the angled end. Really? You're giving me a categorical no, that I couldn't take a piece of rebar without a point on it and drive it into the ground. And again, you're wrong. As a matter of common sense, you're wrong, in human experience. Well, what I would say is that whether you can use the training stake when it's further processed, it becomes a different article of commerce from steel concrete reinforcing bar. It becomes entirely dedicated to use only for the agricultural purpose. We're limited to the K1 factors here, correct? That is correct. You're beginning to get into the K2 factors when you're talking about channels of trade and things of that nature. Let me ask you this question. So the way I understand the product is basically it is rebar, except that it's been stamped on one end. It is not rebar that's subject to the scope. To begin with, I mean, the product, if you didn't stamp it, do you concede that this would be rebar subject to the scope? If you started only with the stock commodity rebar, the starting point before the further processing, then that would be subject to the scope. Let's say there's two pieces of standard rebar right off of the manufacturer floor, and one goes to a construction site and the other goes to some agriculture site or to your client. Your client, what the construction site does is they cut it at 10 feet length or 7 feet, whatever they need. You cut it into 4 feet lengths, and then after that, the only thing else that happens is that you stamp the end so that it forms a point. When the products are imported, they're imported already cut and stamped. You have to answer my question. I'm sorry, could you repeat the question? Basically, your rebar and the same thing, except that yours is cut all the time in 4 to 5 feet lengths, and it's stamped on one end to a point. That's the only difference. That is correct, because the starting point of the rebar is the same. If that's correct, why is it that your product's not covered under the anti-dumping duty order? Just by a plain reading of the plain meaning of the words of the anti-dumping duty order. Absolutely. The plain reading of the scope says that the product covered by the orders is all steel concrete reinforcing bars. The end use is embedded into the language of the plain reading of the scope. It specifically excludes rebar that has been further processed through bending or coating. When you look at the K1 factors... Have your training stakes been further processed through coating? Not through coating, no sir. Have they been further processed through bending? They are bent, yes. How are they bent? Because they're no longer straight. If you put that rebar on a horizontal plane... There's a difference between being bent and when they're straight. You're saying that they're not straight because the point, you have a straight line and then the point throws that line off. But bending, we know that through reading the petition, bending is actually getting the rebar and changing it to a U-shape or S. There's no definition of straight in the petition or in the K1 factors. In fact, the ITC, looking at the K1 factors, said that only stocked reformed rebar, which is not further processed, is subject to the anti-dumping duty orders. So for the ITC... If your stakes were not straight, as your training stakes were not straight, would they be usable by someone in agriculture if they were curved? Wouldn't it be awfully difficult to drive them into the ground to support a planter? The fact that the stakes are not straight at the end, the fact that they're angled at the end, makes them suitable to put into the dirt. Yeah, they have a point at the end. We understand that. Otherwise, they are straight. Would you agree with that? I would agree that they are straight other than the point. So they're not further processed through bending. But they are further processed... There's no... They have to be straight throughout. The order says, product covered by orders is all steel concrete reinforcing bars sold in straight lengths. This is not straight after the further processing. Are you answering my question? I'm trying to, your Honor. Okay. The question is, are they further processed through bending? We would argue that an angled product is the same as bending. There's no functional difference. There's no definition in the petition. There's no definition in the order for what was meant by either straight or bent. So if you have a product that, when it's lying on a flat plane, and it doesn't touch through the whole flat plane, that, we would say, is either bent or angled. Do you contest the finding that your training stakes are plain rounds? We do not contest that finding. Isn't there a difference between bent and bending? That is, I get it. I think you have in mind that if you took a piece of straight bar and you carved out a little shallow U on this side and a little shallow U on that side, that it's gonna look a little bit like an undulating wave. And you might want to describe it as a process of bending. Well, we would say that it's no longer straight, which is part of the plane reading of the scope. And our definition that we provided was that straight is exactly vertical or horizontal without a bend, angle, or curve. There is an angle on this product. There's clearly an angle. And it's when you, because of the point, and because of, and really these definitions of whether it is, you know, the different definitions of straight versus... Is a 90-degree angle a bend? I think it could be either bent or angled. Okay, so in that case, every time you cut a piece of rebar straight across, it's now bent. Is that correct? I don't... Under your definition. I think it depends on if you're cutting it straight down, then it wouldn't, if it's, if it's a straight cut, I don't think it would be bent. That's a 90-degree cut. A 90-degree cut. Yes, then it would be an angled. That would be angled. And if it's a 180-degree cut? I'm not sure how that would look, Your Honor. The other, the other... The Court of International Trade relied on dictionary in order to arrive at a definition for straight, correct? What, what, what's your problem with that definition? Well, we would say that in Commerce, the Commerce Department's final scope ruling, Commerce said that it was straight based on any definition, and that's not true. Based on the definition that was provided by Quidan, that straight is exactly vertical or horizontal without a bend, angle, or curve, that's not true. When you look at the perimeter, it's not straight because it angles. So we, it's our position that was supported by substantial evidence when they said that any definition... So your definition, straight means smooth almost, all the way from beginning to the end. That, that is correct. But how can that be? The rebars here have little ribs going up and down the shaft, correct? But those, the ridges don't have an angle, though, at the end. The bar itself has ridges going down the entire length of the bar. How would you say that that's straight? Ridges have tiny angles in them. And the ridges are designed to interface with concrete. That's what rebar is about. Yes, but, but that, when you have the ridges, you're talking about... I'm sorry? You take those ridges off. When you're talking about the ridges, those ridges come from the stock deformed, stock concrete base. That's the starting point. That's, that, that bar has not yet been further processed. So if you set your definition then, none of that can be straight. The stock rebar is not straight under your definition. No, stock rebar is not further processed under my definition. This, this product goes through further processing. Stock deformed rebar does not. And the ITC stated in its review under the K-1 factors that only stock deformed rebar, which is not further processed, is subject to the anti-dumping duty orders. They said that specifically in their first sunset review. So it's our position that when you have just the stock deformed rebar that's stock deformed, it's not straight. When you have the stock commodity rebar, that's within scope. Once that goes through further processing, that takes it out of scope. In addition, we think that the products also fit the definition of merchant bar. And in fact, commerce made this... Oh, go ahead. Okay. Are your training stakes farm equipment? They are farm equipment. They're a type of farm equipment. They're used for... Can I ask you, why under the language of the, of the order that's sold in straight lengths, et cetera, does it matter whether these are or are not merchant bar? Merchant bar was specifically excluded from the scope in the K-1 materials in the ITC's reports. And no party in this case has disputed that merchant bars are out of scope. And if you look at the... And in fact, commerce... As I read the commerce scope ruling, it didn't dispute it, but it also didn't embrace it. But if you look at the K-1 factors, it has... The ITC report breaks out subject product, and then it has separate categories for non-subject products, which includes merchant bar. In addition, that's not a point that's been disputed by either government or petitioners. Okay, you're into your rebuttal time. Do you want to reserve that? Yes, I would like to reserve that. Thank you very much. So we... Let me make sure I have this correct. We have two different arguments. Counselor Hogan, you're going to argue for 12 minutes, and Counselor Shane for three. Is that correct? Correct, Your Honor. Okay. All right, you may proceed. Thank you, Your Honor. Good morning, and may it please the Court. Under the plain language of the scope of this order, Quedon's training stakes fall within the scope unambiguously, and the commerce of scope ruling should be affirmed. I'm sorry, can I just return to this question about merchant bar? There's nothing about the plain language that says anything about merchant bar. There's nothing in the scope at all. So you can't say it's within the plain language and therefore we win unless you are saying whether it's merchant bar is irrelevant. Otherwise, you have to build in an analysis of merchant bar before you get to the bottom line conclusion. What commerce did was find that this product met the physical description of the merchandise. The argument that Quedon made that in fact their product is merchant bar, which is a different product that's made of smooth rounds. It's a specialty product, not a commodity product that's used for different things, but didn't put any evidence on the record to suggest that somehow merchant bar... that its product was in fact merchant bar. So commerce rejected that argument. I think it's important... What is commerce's position on the question, if they had put on persuasive evidence that this was merchant bar, that would have what consequence for whether these items were within or outside the scope of the order? I can't speak to what commerce's conclusion was because presumably if there was conclusive evidence that it was not intended to be part of the scope, then there would have been a reasonable basis. Is there conclusive evidence that merchant bar was intended not to be part of the scope? What Quedon has referred to solely is the second sunset review in which the ITC explained that the same manufacturing facilities in the United States that are used to manufacture rebar are also used to manufacture merchant bar. Right, but I didn't read that language as saying, and therefore merchant bar is something different from rebar and outside the scope. Again, commerce didn't reach that conclusion, but that is a reasonable conclusion to reach considering that... Merchant bar is used in manufacturing other items. It's used for things like I-beam scaffolding, but this is page 117 of the appendix. The description is that merchant bar products include bars with round, flat, squared, angled cross sections and are used in a variety of products. But the context of that description is that U.S. rebar producers produce additional products using the same equipment. So there's a reasonable inference to be drawn from the ITC's investigation. Quedon says that these states could reasonably be called farm equipment. So I guess my question to you is, is rebar construction equipment? I think it doesn't matter. It doesn't matter whether it's farm equipment or construction equipment because there is no end-use restriction or exclusion built into this scope language. That's true, but I don't understand how it can be equipment at all as opposed to materials. That's probably a better reading of what... I take this from the other Red Brace discussion in which they say, well, Quedon's arguing farm equipment and we're saying intermediate. Right. How do you respond to your colleague's argument about further processing? The scope language contains only two exclusions for further processing, and that is through bending or coating. We all agree that coating is not applicable, and so the only exclusion that they're relying upon is the bending. And Commerce reasonably concluded that simply stamping one end to a point is not bending under a reasonable reading of that language. So there are only two exclusions for further processing. They don't meet either of them. So the fact that they are stamped to a point... Why wouldn't the stamping be further processing? It's my understanding that you can bend by stamping, or a lot of bending is done by stamping. Stamping could be further processing, but the language that we have here is that Commerce has not simply said... the scope language has not simply said further processing such as through bending or coating. Commerce, the scope language specifically limits any further processing to two types of further processing. And the stamping of one end, Commerce found, did not meet a dictionary definition or reasonable definition of bending. Is one end made pointy through stamping or through cutting? The description that Quentin has provided is that it's through stamping. So if for some strange reason somebody wanted to take rebar, and instead of buying the already manufactured alternative smooth steel round bar, they wanted to run it through brushes and smooth off all the burrs that are there that hold on the concrete, would that not be further processing under the definition? If the rebar were then smoothed? Yeah. So they change it into something that's defined out, right? Would it then be further processed or not? Well, I think... It's hypothetical, but... Well, presumably it could then theoretically fall into the specific exclusion for plain rounds if it was smooth. Right. So in that sense, you could further process into something excluded. I suppose that's possible, but that's clearly articulated or reasonably inferenced from the scope language. There's nothing in the scope language that suggests that stamping to a point is the type of further processing that was intended to be exclusionary. Mine is not a legal question. I forgot what I was going to ask. Non-legal question. How do you stamp a point? I'm thinking, is it like a cookie cutter that slices off, but then you get something that doesn't yet look like a point, but then you turn it and... I'm not sure the answer to that question. The answer is I'm not sure. I believe that the scope ruling request does explain the process. Okay. What I was going to ask was, so what's our standard to review with respect to the scope order? Because it seems to me the only issue here is whether there's an exception under bending. Well, Commerce's scope ruling is reviewed for substantial evidence and in accordance with law. So to the extent that there is any sort of interpretation that Commerce engaged in in looking at the definitions of bending and straight, that was for Commerce to do in the first instance. Do we owe any deference to any interpretation that Commerce has made of its own scope order? Yes, this court has repeatedly said that it owes significant deference to Commerce's interpretation. Well, in what case do you stand for that? But global commodity, for example, the court uses the term significant deference, I believe also in Sandvik. I think this court has said that several times. And of course, the court also, as Commerce says, it has to begin with the plain language of the order. Do you see, suppose that in the pending Supreme Court case, Kaiser, there is some cutback on deference to agency pronouncements about the meaning of their formally promulgated documents. What would be the status of the scope ruling? Would that be because it's an authorized procedure under 225 or 225K or 255K or something, that that might still warrant deference, I guess depending on the scope of any cutback in Kaiser that results? I don't think there's anything that Commerce did here that required it to interpret regulations that are considered to be ambiguous. Commerce followed its properly promulgated scope regulations. And so I think that that would still be lawful, and I don't think that would present an issue. Okay. You're into the three minutes of your colleague. Thank you, Your Honor. Mr. Shane, we'll restore you back to three minutes. Good morning, Your Honors. I'm Jack Shane of Wiley-Rhein, here to speak briefly on behalf of Defendant Eberle. So would regular old rebar be construction equipment? I thought the sledgehammer might be. Yeah. My view is it shouldn't be interpreted as equipment. I agree with you. I think it's materials used in construction. And the same thing in agriculture. That's correct. I mean, I would argue that Caden did not argue below that its product was farm equipment before Commerce. It never made that argument. It only made that later in the appeals process. Is there any evidence in the record that demonstrates that the pointed end of the rebar is made by a process other than stamping? Not that I'm aware of. Okay. So you're experienced in representing the steel industry. Am I correct that one way to bend a bar is through stamping? I guess that is one way if a bar is straight and you're bending the material. Then why would not the stamping in this case be constituted bending? Because as Commerce said, you should not just focus on the point, one point on the bar, the end of it that is pointed. That does not change the fact that you have a straight line going from the tip of the rebar to the center of the butt end. That is straight. And Commerce found that a reasonable interpretation is that that bar is not bent. And in any case, if that were true, then a 180-degree cut at any point on the rebar length would constitute bending it because you've got an angle on it. Well, as your honors pointed out, you have ridges on the bar as well. That doesn't mean that it's not straight. Rebar is specifically covered in the scope. It has ridges. If it's plain, it's outside the scope by the scope's terms. And honestly, you know, from my viewpoint, if you want to use the agricultural people would have a reason to either use plain or ridged, maybe depending on whether they want to grip the earth or whatever. And to your point, your honor, earlier, and we've said this below before Commerce, there is nothing about this rebar, these agricultural training stakes that would prevent it being used as a rebar. It has ridges. The only difference is it has a point on one end. The physical characteristics of this product are rebar. The Cadent itself in its scope ruling request called this steel concrete reinforcing bar. If somebody is laying a pad for a new farm and they want to grab a couple of those things because they've run out of rebar, they certainly. Absolutely. I mean, as you said, I mean, this still has ridges, right? The point of the ridges is to adhere to the concrete and reinforce the concrete. The fact that it has a small point on one end does not negate the fact that it can be used as rebar. And I don't think there's anything on the record that suggests otherwise. OK. You're over your time right now. Thank you, your honor. You have two minutes. Thank you. With regard to the issue of Merchant Bar, in Commerce's final scope ruling, they actually cited the definition of Merchant Bar in saying that these products were out of scope. So they actually said that Quidan's agricultural training stakes fit the description of Merchant Bar. This is on APPX 143 in the final scope ruling. Is that the footnote? Yes. That was a simple and I think undisputed mistake. I don't – no, that was a disputed mistake. We did raise that in our briefs. No, no, no, no, no. I thought that Commerce – the people sitting at that table all agree that that was just a screw-up in the Commerce order. I don't – well, they may say that now during litigation, but Commerce's scope ruling is not supported by substantial evidence because it actually says that the description of the merchandise under consideration also comports with the physical description included in the ITC's second sunset review. And then the footnote cites bars with round, square, flat, angled, and channeled cross-sections and used by fabricators and manufacturers to produce a variety of products, which includes farm equipment. So in one place they're saying that we match the description of Merchant Bar, and then in the later section they're saying that we don't. That decision is not supported by substantial evidence. Commerce and petitioners want to basically ignore the plain language of concrete, which is in the plain order of – the plain language of the order of the scope. They want to ignore concrete and the fact that the only use talked about anywhere in the K1 materials is the end use of concrete. The ITC also – sorry, Commerce's decision was just simply not based on substantial evidence. They ignored end use, that after further processing this would no longer be used for concrete reinforcing products, and they extended this case four times. It took over 200 days to make a decision because it was so complex. We would submit that their decision – Isn't that boilerplate language every time they extend? The regulations say that these decisions need to be made in 45 days, and they did not need to say that because it was so complex. When they extend it, do they ever not say it's complex? They could just say we have good cause to extend. So because they themselves acknowledged that this was a complex case, we submit that either that the K1 order factors are dispositive, that the product is in scope, or that the Commerce Department – is out of scope, or that the Commerce Department should have initiated it. Thank you very much. We thank the party for their arguments.